UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

RECEIPT #_____
AMOUNT $___150___
SUMMONS ISSUED_Y-1__
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE____12-3-04____

TECHNICAL EDUCATION RESEARCH )
CENTERS, INC., )
)
    Plaintiff, )
)
    v. )    Civil Action No. _____
)
LAURTOM, INC., )
)
    Defendant. )

04 cv 12539 RCL

MAGISTRATE JUDGE _Alexander_

## COMPLAINT

This is an action for breach of a publishing contract. Plaintiff complains of Defendant as follows:

### Parties

1.  Plaintiff Technical Education Research Centers, Inc. ("TERC") is a not-for-profit corporation organized and existing under the laws of Massachusetts with a principal place of business at 2067 Massachusetts Avenue, Cambridge, MA 02140. It is engaged in education research and development. TERC has created and licensed to publishers many well-known and widely used curricula for grades K-12 in the fields of math and science.

2.  Defendant Laurtom, Inc., formerly It's About Time, Inc., ("Laurtom") is a business corporation organized and existing under the laws of New York with a principal place of business at 84 Business Park Drive, Armonk, NY 10504. Under its former name, Laurtom was engaged in the business of developing, publishing and selling math and science education programs and contracting with others, including the Plaintiff, for

1

use of specially developed curricula. The nature of its current business is not fully known to plaintiff. Defendant will sometimes be referred to in this Complaint by its former name "It's About Time" or "IAT."

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. §1332, because the parties are domiciled in different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the defendant because it transacts business in the Commonwealth of Massachusetts, including but not limited to the execution of the contract at issue in this action.

5. Venue is appropriate in this Court under 28 U.S.C.A. § 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred here.

## Facts

6. Plaintiff TERC develops various programs and products in the education field, chiefly curricula in the fields of mathematics and science. Many of its development projects are funded in whole or in part by grants from the National Science Foundation ("NSF"), which seeks to improve the quality of education in math and science through the development of innovative curricula. Such is the case with the Curriculum at issue in this action, entitled *Astrobiology: The Search for Life in the Universe* (the "Curriculum").

7. Plaintiff received a grant from the NSF to fund the development of the Curriculum in 1997. TERC began writing the Curriculum at that time, as a full year science curriculum intended for Grade 9.

2

8. As the Curriculum was nearing completion in late 2000, TERC set out to find a publisher for it. It did so partly for its own financial interest, but also because the NSF mandates that educational materials funded with its grants should be published whenever possible.

9. In the Spring of 2001, It's About Time expressed an interest in publishing the Curriculum. Jeffrey Lockwood, the TERC employee chiefly responsible for completing the development of the Curriculum, met with IAT in May 2001 to discuss its publication, and IAT expressed enthusiasm about publishing it after reviewing a prospectus.

10. After this meeting, TERC's president Dennis Bartels engaged in negotiations with It's About Time regarding the publication of the Curriculum. Plaintiff completed a manuscript and began to perform field testing over the Summer of 2001.

11. Mr. Bartels' negotiations with It's About Time ultimately led to a contract (the "Agreement") that was signed at TERC's office in Massachusetts on or about October 25, 2001, attached hereto as Exhibit A.

12. It's About Time had a particular and unique format in which it wanted all curricular materials it published to be presented. Beginning in June 2001, TERC made changes to certain aspects of the Curriculum to match IAT's product line. In order to make the Curriculum compatible with IAT's format, TERC expended considerable staff and other resources.

13. After the Agreement was executed, IAT engaged two senior educators who suggested further modifications to the Curriculum based on the education standards of various states. TERC continued to make modifications to the Curriculum based on IAT's changing requirements from October 2001 through March 2002, expending further

3

resources that ultimately totaled approximately $200,000 in value, or almost half of the annual budget for the project. TERC expended these resources at the request of IAT and in reliance on IAT's promise to publish the Curriculum.

14. TERC delivered the Curriculum to IAT by February 15, 2002 in compliance with Paragraph 3 of the Agreement, but IAT requested that TERC obtain feedback from the National Science Teachers' Association ("NSTA") before submitting the Curriculum in its final form.

15. Mr. Lockwood and other TERC employees traveled to the NSTA in March 2002, upon IAT's request, in an effort to promote the Curriculum and gather feedback. IAT promised to reimburse TERC for its travel expenses and for the cost of producing 200 promotional CDs that TERC distributed during the trip to promote the Curriculum to teachers. However, IAT never paid TERC's invoices (attached hereto as Exhibit B), totaling over $3,000.

16. The Curriculum was delivered to IAT in its final form on April 15, 2002. If IAT did not find the Curriculum acceptable for publication in the final form submitted, it was required to provide TERC a written statement of the reasons the Curriculum was unacceptable. *See* Exhibit A, Paragraph 9. TERC would then have 60 days to remedy any deficiency. IAT was deemed to have accepted the Curriculum unless it provided such a statement within one month of delivery. *Id.*

17. IAT never provided any written statement claiming the Curriculum was deficient, therefore the Curriculum submitted by TERC on April 15, 2002 was deemed accepted by IAT on May 15, 2002.

4

18. Another term of the Agreement was that Defendant would produce, make available, and distribute marketing materials featuring the Curriculum by September 30, 2002. *See* Exhibit A, Paragraph 12.

19. Defendant failed to market the Curriculum by September 30, 2002, which constituted a material breach of the Agreement. In addition, Defendant removed all references to the Curriculum from its website by September 2002.

20. Defendant also failed to publish and sell the Curriculum or adhere to its other obligations under the Agreement. Its intent was to have published and distributed the Curriculum by September 1, 2003, and it agreed the Curriculum would in any event be published no later than 24 months from acceptance. *See* Exhibit A, Paragraph 11a.

21. IAT's excuse for failing to publish the Curriculum was that the market had changed in a way that made the Curriculum no longer financially appealing to IAT. However, nothing in the Agreement permitted IAT to drop publication on these grounds, particularly after it had already accepted the manuscript for publication.

22. Paragraph 18c of the Agreement states that if either party is in material breach of the Agreement, the other party shall have the right to terminate the Agreement upon 60 days' written notice, unless such breach is cured within that 60 day period. *See* Exhibit A, Paragraph 18c. As a result of Defendant's failure to market the Curriculum, Plaintiff sent Defendant a letter dated June 2, 2003 (attached hereto as Exhibit C) giving notice of termination pursuant to this Paragraph.

23. No cure for Defendant's breach was possible, and, indeed, Defendant made no effort to cure its breach, nor did it even respond to Plaintiff's June 2, 2003 letter. Defendant has made no effort to ameliorate any of the damage it has done to Plaintiff.

5

24. Plaintiff has suffered substantial monetary harm from Defendant's breach of the Agreement in the form of lost revenue from sale of the Curriculum and the cost of formatting the Curriculum to Defendant's unique specifications.

25. If Defendant had fulfilled its obligations under the Agreement and marketed the Curriculum with reasonable efforts, TERC would have received an estimated $136,000 minimum in royalties over the past two years.

26. Furthermore, the modifications TERC made to the Curriculum in reliance on IAT's promise to publish it have so closely aligned it with IAT's product line that major revisions are required to its format for it to be used by any other curriculum publisher. TERC estimates such revisions will cost approximately $45,000.

27. Given the time that will be required to rewrite the Curriculum – both to reformat it for another publisher, and to update scientific content that is no longer current – it will be at least another eighteen months before the curriculum can generate income for TERC.  TERC's losses due to IAT's breach include these lost royalties going forward.

## RELIEF REQUESTED

WHEREFORE Plaintiff prays that this Honorable Court:

A.  Award Plaintiff its lost revenues from sales of the Curriculum in an amount to be determined, but in no event less than $136,000 with respect to lost revenues to date;

B.  Award Plaintiff $45,000 in payment of the cost to revise the Curriculum from Defendant's unique format to that of a replacement publisher;

C.  Award Plaintiff additional damages as restitution for expenses incurred due to Plaintiff's reliance on Defendant's express and implied promises to publish the Curriculum, in an amount to be determined; and

D.  Award Plaintiff such other and further relief as the Court deems just and proper.

### Jury Demand

The Plaintiff hereby demands a jury on all claims and issues so triable.

TECHNICAL EDUCATION RESEARCH
CENTERS, INC.,

Plaintiff,

By its attorneys,

Dated: December 3, 2004

William S. Strong, Esq., BBO# 483520
Sherry Ruschioni, Esq.,  BBO # 643393
Amy C. Mainelli, Esq., BBO #657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)

# AGREEMENT

This Agreement is made on this 25th day of October 2001, between It's About Time, Inc., of 84 Business Park Drive, Armonk, New York 10504 (hereinafter called the "Publisher") and Technical Education Research Centers, Inc. ("TERC"), of 2067 Massachusetts Avenue, Cambridge, MA 02140 (hereinafter called the "Author") for the publication of a work (hereinafter called the "Work") on astrobiology designed primarily for grades 8, 9, and 10, to be provisionally entitled: *Astrobiology: The Search for Life in the Universe.*

**Publication Rights**

1.  The Author grants to the Publisher certain exclusive rights in the Work, by a Transfer of Copyright attached hereto and incorporated herein by reference. Prompt registration and deposit of the Work itself in the Copyright Office will be the responsibility of the Publisher with any costs attendant thereto borne by the Publisher. By such Transfer of Copyright the Author grants to the Publisher the exclusive right to reproduce and distribute the Work, in all media including but not limited to print and electronic media and all languages including but not limited to Spanish, in the education market throughout the world. Notwithstanding the exclusivity of such license as against all third parties, the Author reserves to itself the non-exclusive and non-transferable right in perpetuity to use portions of the Work in its own development work and in workshops for teachers and others, provided that the Author will not

1

thereby make the Work available in a manner that would interfere, or compete with the Publisher's sales and marketing of the Work.

**Term**

2.   The term of this Agreement shall be in perpetuity, subject only to termination as set forth in Paragraphs 3, 11a, and 18a below.

**Preparation and Delivery**

3.   The Author will prepare and deliver the Work to the Publisher in the final form as specified in Paragraph 4 on or before February 15, 2002, which time will be of the essence.  The Work will consist of one teacher guide including black line masters, and one student guide, each containing eighteen chapters comprising a full year integrated science course that includes concepts in chemistry, physics, biology, Earth and space science, and mathematics.  The Work will also include a list of equipment and supplies needed to conduct activities described in the Work.

The teacher guide will contain necessary and appropriate material on use of the curriculum including content, assessment, and pedagogy. The curriculum is designed to be a full year of classes (180 50-minute sessions), with suggestions for additions and extensions. The total anticipated page count for the teacher guide is approximately 300 - 450 pages. The total anticipated page count for the student guide is approximately 250 - 350 pages.

2

The Work will make use of a Web site, provisionally entitled *Astrobiology*, providing teacher materials, sample activities, and resource links to a students' research and exploration tool and to other relevant Internet sites. The Author agrees to host this *Astrobiology* Web site on one of its servers for as long as the Work shall remain in print under this Agreement. The Publisher agrees to pay the Author a reasonable annual fee for hosting the Web site. The Author and Publisher will enter into a separate agreement, to be renewed on a year-to-year basis, for provision of the hosting. Nothing herein shall be construed to grant to the Publisher any exclusive rights in the Web site or any content posted thereon other than content in which exclusive rights have been otherwise granted in this Agreement.

The Work will include a collection of four-color illustrations to supplement the teacher guide.

If the Author fails to meet the above delivery date, or any mutually agreed extended delivery date, or if the Work as delivered shall be unacceptable to the Publisher based upon the criteria set forth in Paragraphs 4 and 9, the Publisher shall have the right to terminate this Agreement, and upon such termination all rights in the Work shall revert to the Author.

**Final Form**

4.      The Author will deliver the text of the Work in typescript form and on disk, formatted in Microsoft Word 98, along with copies of all

3

permissions for use of third-party materials. A copy of the Work will be retained by the Author. The Author agrees that the final typescript as delivered will have undergone a systematic and thorough review and that all reasonable efforts will have been made to verify all facts, including historical dates. The Author agrees that the final Work has been based on years of field testing designed to ensure increased student learning, and that the final Work has been revised to incorporate the suggestions and insights of the field tests that were completed in July 2001. The Author will deliver at the same time high quality illustrations in electronic formats such as, but not limited to, JPG, GIF, and TIFF. The Author and the Publisher recognize that certain illustrations must be published as four-color illustrations and will agree on the selection of these prior to Author's delivery of the Work. The Author and the Publisher agree that four-color illustrations will appear in the student guide, and that four-color illustrations to accompany the teacher guide will be offered in a supplementary shrink-wrapped packet, on CD-ROM, and/or in PDF format on the *Astrobiology* Web site.

**Glossary and Index**

5.    The Author will prepare the index and glossary for the student guide.

**Copyright Permissions**

6.    The Work will contain no material from other copyrighted works without the written permission of the copyright owner(s) of such material. Using a form that was accepted by the Publisher in June, 2001, the Author will at the Author's sole expense obtain such

4

permissions, which will be delivered to the Publisher along with the Work in final form. The Publisher will, on its own account, obtain the requisite permissions and bear all costs for any line art, creative art, and photographs that it introduces into the Work.

## Marketing Materials

7a.　The Author will work with the Publisher to prepare a course overview for teachers by November 15, 2001, for the Publisher's use in marketing. This will not be included in the Work as published, but will otherwise be dealt with as a part of the Work for purposes of this Agreement.

7b.　The Author agrees to perform, as reasonably requested by the Publisher and subject to the availability of the Author's personnel, sales presentations, convention workshops, teacher inservice workshops, and other short sales and/or training events. The Author agrees to prepare and to perform, as reasonably requested by the Publisher and subject to availability of Author's personnel, training institutes for the benefit of the Publisher's employees. In any event, the Publisher agrees to pay the Author's reasonable costs and pre-approved expenses.

## Royalty

8a.　The Publisher will pay the Author a royalty on its net receipts from all sales of the Work and other direct print derivatives, or subsets of the Work which were developed and funded by the Author, less returns and shipping and taxes, according to the following schedule:

5

6% on the first $4,000,000 of aggregate sales;

8% on aggregate sales from $4,000,001 to $8,000,000;

10% on aggregate sales from $8,000,001 to $12,000,000;

12% on aggregate sales from $12,000,001 to $14,000,000; and

14% on all aggregate sales in excess of $14,000,000.

8b.  The Publisher reserves the right to sublicense any and all rights and obligations hereunder on its part to be performed.  From any license that the Publisher may grant to any domestic third party of any right granted it herein in the Work, the Author will receive the royalties determined in accordance with Paragraph 8a, and those royalties will be based on the net receipts received by the sublicense.  From any license that the Publisher may grant to any international third party of any right granted it herein in the Work, the Author will receive fifty percent (50%) of the Publisher's receipts less Publisher's direct costs associated with the sublicense.

8c.  In the event there is any advance against royalties paid by the Publisher, such advance will be repaid on a first-dollar basis from royalties thereafter accruing to the Author from the version of the Work for which the advance has been made.

**Publisher's Acceptance**

9.  If the Publisher does not find the Work as finally submitted on February 15, 2002 to be acceptable, it will give the Author a written

statement of its reasons and the Author shall have sixty (60) days to remedy the deficiencies. The Publisher will be deemed to have accepted the Work unless it provides such a statement within one (1) month of delivery of the Work.

**Author's Warranty**

10.    The Author warrants, with respect to the Work other than those portions for which permissions will be obtained, that the Author is the sole and exclusive author and owner of copyright, that the copyright is clear and unencumbered, and that the Work does not and will not in any way infringe upon any copyright, violate any property rights, contain any scandalous, libelous, injurious, or unlawful matter, or invade any person's right to privacy or other personal rights. The Author warrants that it has the legal right to enter into this Agreement and does not need permission from any third-party to do so. The Author will indemnify the Publisher and hold it harmless from and against any loss, cost, damage, or expense arising from any breach of any of the foregoing warranties. The Author will have the right at its election and its sole expense to defend any claim or action alleging facts constituting a breach of any such warranty. The Publisher may settle any such claim or action but the Author will not be responsible for indemnifying the Publisher for any settlement undertaken without its written consent, which will not be unreasonably withheld.

**Design and Publication**

11a.   When the Work is deemed acceptable for publication, the Publisher will prepare the Work for publication and publish the Work at its own expense no later than 24 months after acceptance, of which time will be of the essence. It is the Publisher's intent to make a pre-publication version of the Work available at an appropriate time, but no later than March 1, 2003 and to prepare a full scale launch and distribution of the published Work by September 1, 2003. The Publisher's preparation shall not materially change the meaning or otherwise materially alter the text of the Work from a content or pedagogical perspective. The Author shall have the opportunity to review the Work prior to final printing to ensure the pedagogical integrity of the Work. The Author acknowledges that final decisions on style, format, binding, and packaging are the responsibility of the Publisher after consultation with the Author.

If the Publisher fails to publish the original Work within twenty four months after acceptance of the final manuscript, the Author may terminate this Agreement on sixty (60) days notice, provided that the Publisher may prevent termination by publishing within the sixty (60) day notice period. All rights in the Work will revert to the Author upon such termination.

11b.   The Publisher agrees to use the TERC logo for marketing purposes, including advertising materials, promotional materials, and the like, related to the Work. Credits using the Author's name and logo will appear prominently as follows:

8

(i)      on the front cover of each volume of the Work along with the names of the individual authors Jodi Asbell-Clarke, Daniel Barstow, Teon E. Edwards, James L. Larsen, Jeffrey F. Lockwood, and Christopher H. Randall.

(ii)     on the title page of each volume of the Work along with the names of the individual authors Jodi Asbell-Clarke, Daniel Barstow, Teon E. Edwards, James L. Larsen, Jeffrey F. Lockwood, and Christopher H. Randall, along with the following text: "This curriculum was developed by TERC, Cambridge, Massachusetts. Funded in part by a grant from the National Science Foundation."

(iii)    on the back cover of each volume, in substantially the following form: "Developed by TERC, Cambridge, Massachusetts."

(iv)     on the inside credit page at a location to be agreed, where a credit for the Publisher will also appear, provided that both names shall be in the same type style and lettering size.

(v)      on the spine of each volume.

Acknowledgment of field test teachers and other staff will be included in an appropriate place.

11c.  The Publisher shall include on the copyright page the National Science Foundation logo and the following acknowledgment and disclaimer statement:

"This material is based upon work supported by the National Science Foundation under Grant No. ESI-9730728. Any opinions, findings, and conclusions or recommendations expressed in this material are those of the authors and do not necessarily reflect views of the National Science Foundation."

**Price/Marketing**

12.  The Publisher will have the sole right to determine the price at which the Work will be sold. The Publisher agrees to produce, make available, and distribute marketing materials featuring the Work by September 30, 2002. Marketing materials will wherever reasonably possible and appropriate recite that the Work has been prepared under a grant from the National Science Foundation and will in all cases display the Author's name ("TERC") and logo. The Publisher will provide the Author, in advance, with copy describing the Work produced by the Publisher for use in its catalogs, Web sites, and major advertising brochures. If no response has been received by Publisher from Author in five (5) business days from Author's receipt of such advance copy, Author's approval will be presumed to be granted.

The Publisher will:

(i)    list the Work in its print and online catalogues with illustrative material and descriptive text for the duration of the first edition and such subsequent editions for as long as the Work remains in print;

(ii)   mail a one-page promotional announcement specific to the Work to the mailing list which the Author will develop for its project known as "Astrobiology: The Search for Life in the Universe";

(iii)  display the Work prominently at each annual national meeting of the National Science Teachers Association (NSTA) and the Association for Supervision and Curriculum Development (ASCD), and at other appropriate meetings of professional associations which the Publisher attends as determined on a year-to-year basis by annual consultation between the Publisher and the Author;

(iv)   bring the Work to the attention of school districts and states with a demonstrated interest in middle and secondary-level science;

(v)    provide the Work at Publisher's best price to curriculum resource libraries;

(vi)   deposit the Work at the National Science Foundation sponsored curriculum implementation and dissemination centers;

(vii)  conduct its customary professional development workshops to promote awareness of the Work; and

11

(viii)     meet annually with Author representatives to discuss marketing plans and strategies, and concerns.

The Author will provide the Publisher with one or more mailing lists for use in marketing the Work. All mailing lists supplied to the Publisher by the Author will be considered trade secrets of the Author and without the Author's prior written consent will neither be revealed by the Publisher to any third party nor used by the Publisher as an intact or identifiable mailing list for promoting anything other than the Work. The Author will put notice of the publication of the Work on the Author's World Wide Web page and publish an announcement of the publication of the Work in its semi-annual publication *Hands-On!*. The Author will display the Work at all professional conventions and meetings for which it rents space for the purpose and display of its products for as long as the Work shall remain in print. The Author will list the Work in its product catalogues for as long as the Work shall remain in print.

**Author's Copies**

13.     The Publisher will furnish the Author fifty (50) copies of each edition of the Work published at no cost to the Author. Additional copies will be furnished to the Author upon request at the Publisher's best price at the time of the request.

**Accountings**

14a.     The Publisher will render a statement of account and payment of royalty bi-annually, forty-five (45) days after the end of the

Publisher's fiscal years (December 31st), and forty-five (45) days after June 30th. Each royalty statement will identify the number of copies sold and at what price(s). The Publisher agrees to keep complete books of account and records insofar as they relate to the publishing and sale of the Work and the sale of any licensing rights therein. The Author will have the right, at any time during regular business hours, on reasonable notice to examine those books and records, or to have its designated accountants do so at the Author's expense. If any such examination reveals an underpayment of royalties greater than ten percent (10%) of the royalties owed for any given period, the Author's cost of the audit will be borne by the Publisher. Author will conduct not more than one (1) audit per two (2) years, without good cause.

14b.    During the period of the Agreement and for three (3) years after, TERC, the National Science Foundation, and their duly authorized representatives shall have the right to examine the Publisher's records relating to sales and royalties under this Agreement, at any time during the business day, upon reasonable thirty (30) days prior notice. Such records must be kept available for inspection during that period.

## Governmental Rights

15.    Both the Publisher and the Author acknowledge that the Federal government will have a nonexclusive, nontransferable, irrevocable, royalty-free license to exercise or have exercised for or on behalf of the U.S. throughout the world all the exclusive rights provided by

13

copyright. Such license, however, will not include the right to sell copies or phonorecords of the copyrighted works to the public.

## Competitive Material

16.    The Author agrees that during the existence of this Agreement the Author will not, without the written consent of the Publisher, prepare or assist in the preparation of any other integrated science curriculum with a central theme of astrobiology for grades 8, 9, and/or 10.

## Excess Copies

17.    If the Publisher has copies of the Work on hand which in its judgment cannot be sold on usual terms within a reasonable time, the Publisher will first offer such copies to the Author at remainder discount, such discount to be determined by the Publisher's base cost, to include the costs of development, overhead, and printing, paper, and binding, i.e. at cost. If the Author fails to purchase such copies at such discount within thirty (30) days thereafter, the Publisher may sell such copies at the best price it can obtain provided the price is greater than the price offered by Author. If such copies are sold at or below the Publisher's cost, no royalty will be paid to the Author on such sales. In the event the copies are sold for an amount in excess of the Publisher's cost, the Author will be paid a royalty based upon the schedule set out in Paragraph 8 hereof or will be paid the difference between the sale price on the copies and the Publisher's costs, whichever is the lesser.

**Out of Print Provision**

18a.  When in the judgment of the Publisher the demand for the Work is no longer sufficient to warrant its continued publication, the Publisher reserves the right to declare the Work out of print by written notice to the Author and to discontinue further publication of the Work.  Following such declaration, the Publisher may dispose of any and all plates, negatives, film, and copies of the Work, and unbound sheets, without liability to the Author, provided that the Author will have thirty (30) days from the date of such notice to agree, by written notice to the Publisher, to purchase some or all such items at one-fourth of the Publisher's actual manufacturing cost to the extent such items exist.  All rights to the Work will revert to the Author at such time as the declaration is effective.  Furthermore, if

(i)  the Work has been in print for four (4) years, and in any two (2) consecutive subsequent years, net sales (i.e., sales less returns) do not exceed ten percent (10%) of the average of net sales for the second, third, and fourth years during which the Work was in print, and the Publisher has not requested that the Author revise the Work as set forth in Paragraph 19, or

(ii)  the Publisher fails to display the Work at at least one major conference, by listing the Work in its catalog, and by at least one mail promotion prominently featuring the Work in the previous twelve (12) months,

the Author may by written notice to the Publisher terminate this Agreement, whereupon all rights in the Work will revert to the Author, provided that notice based on item (i) must give the Publisher thirty (30) days in which to request, in good faith, that the Author revise the work, and provided further that notice based on item (ii) (failure to promote) must give the Publisher thirty (30) days in which to give the Author written assurances that the marketing efforts described in item (ii) will be undertaken within the next full royalty period. If the Publisher gives the Author such written assurances with respect to marketing efforts (and does in fact undertake those marketing efforts within such period) such notice will be ineffective.

18b.    Any reversion of rights pursuant to Paragraph 18a will be subject to any licenses then in force, and the royalty provisions of this Agreement will continue to apply to the proceeds of such licenses. Furthermore, in the event of the termination of this Agreement, the Publisher shall be entitled for a period of one year to sell off any inventory existing on the date of termination, exclusive of fulfillment of current contracts obligated by the Publisher.

18c.    Subject to Paragraph 18a above, if either party is in material breach of this Agreement the other party shall have the right to terminate this Agreement upon sixty (60) days' written notice, unless the party in breach cures its breach within that 60-day period.

18d.    Termination will not affect the Author's right to receive royalties on any revenues with respect to the Work received by the Publisher after the effective date of termination.

**Revision**

19a.    If the Publisher determines that it is in the best interest of the Work that a revision be prepared, the Publisher will bring such determination to the attention of the Author and request that the Author prepare a revision of the Work. The provisions of this Agreement shall apply to each revision of the Work by the Author as though that revision were the Work being published for the first time under this Agreement. The Author agrees to notify the Publisher within ninety (90) days of its decision whether or not to prepare a revision. If the Author agrees to undertake the revision it also agrees to proceed diligently with the revision, keeping the Publisher informed of progress, and to deliver the completed revision to the Publisher at a time mutually agreed upon.

19b.    The Publisher may provide funds to the Author for the cost of the revision as an advance against the Author's future royalties.

19c.    If the Author is unwilling or unable to revise the Work, the Publisher is authorized to find an acceptable coauthor with whom the Author can work to prepare a revision. In such case, the coauthor's royalty share shall be negotiable, but shall be a fair and equitable percentage of the net royalties. Should the Author be unwilling or unable to assist the Publisher in finding a coauthor the Publisher may select a

17

person to prepare the revision for a share of the Author's royalties that the Publisher determines is commensurate with the time and effort required to prepare the revision. In no event will a second author's share exceed 50% of the royalties due the Author.

19d.    The Publisher will also be entitled to display the name of the Author and any such preparing party in the revision or adaptation of the Work and in advertising related thereto, provided however that the Author will be given the opportunity to review the reviser's work prior to publication and may insist on removal of the Author's name from the product and all marketing materials if it feels that the quality of the reviser/adapter's product will reflect adversely on the Author. Removal of the Author's name will not affect the Author's royalty rights hereunder.

19e.    If a revision constitutes a substantial reworking of the concepts, pedagogy, and/or represents re-doing approximately twenty (20) percent of the text or graphics of the Work it will be called a second edition and royalties hereon will be reset to six (6) percent and computed as if it were the original Work. Otherwise, sales of any revision will be cumulative for purposes of Paragraph 8.

**Benefit**

20.    This Agreement shall bind and benefit the parties' respective successors and permitted assigns. This Agreement may not be assigned by the Publisher without the Author's prior written

consent, except in the case of a transfer of all or substantially all of the Publisher's assets or business, nor may the Author's consent in other circumstances be unreasonably withheld. Notwithstanding anything to the contrary contained herein, in the event that the Author shall withhold its consent as aforesaid, and the Publisher shall determine to sell or assign its rights under this Agreement, the Author shall have the right to acquire all of the Publisher's rights herein upon the same terms and conditions as the bonafide third party assignee or purchaser. The Author shall notify the Publisher of its intention to so purchase the rights herein by notice within thirty (30) days after receipt of advice from the Publisher outlining the terms and conditions of the third party assignee or purchaser. Notice of any such opportunity must have been given in writing, stating the proposed terms of sale and the identity of the proposed buyer, and the Author must have had at least thirty (30) days in which to agree to purchase (or arrange for a third party to purchase) the Publisher's rights on such terms by written notice to the Publisher, provided that in no event will the Author (or such third party) have less than a further sixty (60) days in which to tender the same consideration as offered by the proposed buyer. In the event that the Author shall fail to notify the Publisher of its intention to purchase the Publisher's rights within the said thirty

19

(30) day period, the Publisher shall be free to sell its rights to said third party without any obligation to the Author.

**Miscellaneous**

21.    This Agreement constitutes the entire Agreement between the parties hereto.  It shall be interpreted, construed, and enforced under the laws of the State of New York.  It may not be amended or modified in any way except in writing signed by officers of both the Author and the Publisher.  The headings contained in this Agreement are inserted for convenience only and do not constitute a part of this Agreement.  The Author and the Publisher acknowledge to the other that no representations have been made or relied upon in entering into this Agreement except as may be contained herein.  The failure of any party to enforce any provision herein shall not constitute a waiver of that or any other provision contained in this Agreement. Any notice that one party wishes to give the other may be sent to the signers below or their successors by any means requiring receipt signature, or by facsimile transmission confirmed by first class mail.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

TECHNICAL EDUCATION RESEARCH CENTERS, INC.

By: _____
Dennis Bartels
President

IT'S ABOUT TIME, INC.

By: _____
Laurie Kreindler
President

20

## TRANSFER OF COPYRIGHT

For valuable consideration the receipt and sufficiency of which is hereby acknowledged, Technical Education Research Centers, Inc., of Cambridge, Massachusetts, hereinafter referred to as the "Author," hereby grants to It's About Time, Inc. of Armonk, New York, the exclusive license to reproduce and to distribute including publishing, marketing, and sales in all media throughout the world in all languages, in the education market, the work entitled *Astrobiology: The Search for Life in the Universe*. All rights not expressly granted herein, including but not limited to all rights outside the education market, are reserved to the Author. The license granted herein is subject to the terms and conditions of that certain publishing agreement of even date between the Author and It's About Time, Inc.

Technical Education Research
Centers, Inc.
By: _____          10/25/01
Dennis Bartels                          Date
President

It's About Time, Inc.
By: _____          Oct 25, 2001
Laurie Kriendler                        Date
President

21

**INVOICE**

# Astrobiology Project (4140.4)

For expenses incurred at NSTA San Diego

For: Ingrid Castro
IAT
84 Business Park Drive
Armonk, NY10504

Invoice for  Promotional Astrobiology CD-ROM  Sampler

Date:    ___4/16/02_____

To: _____It's About Time Publishing_____

For Production  of CD

Total cost = _$653.61, make check payable to **TERC/Astrobiology Project/4140.4**

Please  remit to:

TERC
attn: Jeff Lockwood
2067 Mass Ave.
Cambridge, MA 02140

## INVOICE

## Astrobiology Project (4140.4)

For expenses incurred at NSTA San Diego

For: Ingrid Castro
IAT
84 Business Park Drive
Armonk, NY10504

Invoice for Services Rendered:

Date:    ___3/2- - 3/30/02_____

To: ____It's About Time Publishing_____

For Servic es  Preformed

Pay for  plane tickets  as per agreement for  NSTA Convention,  San Diego, CA

Summary of Travel:

J. Lockwood – 197.00, Tashà Morris – 628.92, Jodi Asbell-Clarke – 578.90,  Teon Edwards – 406.00, Brian Conroy – 592.50

Sum of travel  = _$2403.32_payment  due, make check payable to TERC/Astrobiology  Project/4140.4

Please  remit to:

TERC  attn: Jeff Lockwood
2067 Mass Ave.
Cambridge, MA 02140

*Hands-on math and science learning*



2067 Massachusetts Avenue
Cambridge, Massachusetts 02140
617-547-0430    FAX 617-349-3535

T E R C

JUN  6

2 June 2003

Laurie Kreindler, President
It's About Time, Inc.
84 Business Park Drive
Armonk, New York 10504

Re:    Astrobiology Publishing Agreement

Dear Laurie:

I am writing, with regret, to give notice of termination pursuant to Paragraph 18(c) of the agreement dated 25 October 2001 between TERC and It's About Time (IAT) for publication of TERC's curriculum entitled Astrobiology.

The material breach on which this notice of termination is based is a breach of Paragraph 12 of the agreement, which provides:

The Publisher agrees to produce, make available, and distribute marketing materials featuring the Work by September 30, 2002.

By September of 2002, IAT had not only failed to market the work but had actually removed all references to the work from its website. We understand that this was done due to IAT's determination that the market had changed and that it would no longer be economically advantageous to publish Astrobiology. However, the work had already by that date been accepted for publication and there was no legal basis for refusing to market or publish the work.

Paragraph 18(c) says that notice shall be effective after 60 days, in order to provide the party in breach an opportunity to cure its breach. Since there is no cure possible for the breach noted here, this notice of termination should be considered be effective immediately.

TERC has suffered substantial loss due to IAT's unjustified decision not to publish Astrobiology. TERC is willing, however, to waive its claims for damages provided that IAT promptly signs, without alteration, the Termination Agreement accompanying this letter, and promptly takes all actions required under that Termination Agreement.

Yours sincerely,

Dennis Bartels, President

cc. William Strong, Kotin, Crabtree & Strong

# TERMINATION AGREEMENT

This Termination Agreement is made as of June 5, 2003, in termination of the agreement dated 25 October 2001 (the "Publishing Agreement") between It's About Time, Inc., of 84 Business Park Drive, Armonk, New York 10504 (the "Publisher") and Technical Education Research Centers, Inc. ("TERC"), of 2067 Massachusetts Avenue, Cambridge, MA 02140 (referred to in the Publishing Agreement as the "Author"), concerning the publication of a work provisionally entitled: *Astrobiology: The Search for Life in the Universe* (the "Work").

The basis for the parties entering into this Termination Agreement is that the Publisher, having accepted the manuscript for the Work, has decided that it does not want to publish the Work due to changes it perceives in the marketplace. The purpose of this Termination Agreement is to enable TERC to place the Work with another publisher without imposing on TERC the financial cost resulting from the Publisher's decision, including the expense of revising the Work.

1.      The Publishing Agreement is hereby terminated, effective as of June 2, 2003. All rights in the Work granted to the Publisher under the Publishing Agreement hereby revert to TERC, free and clear of all liens and encumbrances. The Publisher warrants that it has taken no action and suffered no omission to occur that would impair or limit the rights that hereby revert to TERC. In confirmation of this, and for use in the public record if necessary, the Publisher is executing and delivering to TERC the Transfer of Copyright attached to this Termination Agreement.

2.      The Publisher is hereby relieved of its obligations under the Publishing Agreement, including but not limited to its obligation to publish the Work. The parties' rights and obligations henceforth will be solely those set forth in this Termination Agreement.

3.    The Publisher will pay to TERC, simultaneously with the execution of this Agreement, the following sums:

a.    $3056.93, in payment of outstanding invoices for travel and other expenses incurred by Jeffrey Lockwood and the Astrobiology team of TERC;

b.    $45,000, in payment of the anticipated cost to TERC of revising the Work from the Publisher's unique format to that of whatever replacement publisher TERC finds for the Work; and

c.    $850, in payment of the fees incurred by TERC in connection with the preparation of this Termination Agreement,

for a total of :    $48,906.93.

4.    The Publisher represents that it has not entered into, and warrants that for two years after the date hereof will not enter into, any agreement with any third party for the publication of any work on the subject of science through the theme of astrobiology.

5.    This Termination Agreement constitutes the entire agreement between the parties. It shall be interpreted, construed, and enforced under the laws of the State of New York. It may not be amended or modified in any way except in writing signed by officers of both TERC and the Publisher. TERC and the Publisher each acknowledge to the other that no representations have been made or relied upon in entering into this Agreement except as may be contained herein. The failure of any party to enforce any provision herein shall not constitute a waiver of that or any other provision contained in this Agreement. Any notice that one party wishes to give the other may be sent to the signers below or their successors by any means requiring receipt signature, or by facsimile transmission confirmed by first class mail.

IN WITNESS WHEREOF, the parties have executed this Termination Agreement the day and year first above written.

2

TECHNICAL EDUCATION RESEARCH
CENTERS, INC.

IT'S ABOUT TIME, INC.

By: Laurie Brennan, CFO
Dennis Bartels                    for
President

By:_____
Laurie Kreindler
President

3

## TRANSFER OF COPYRIGHT

For valuable consideration the receipt and sufficiency of which is hereby acknowledged, It's About Time, Inc. ("IAT"), of Armonk, New York, hereby grants back and reverts to Technical Education Research Centers, Inc., of Cambridge, Massachusetts, all rights that IAT has heretofore acquired from TERC in and to the work that has from time to time been provisionally entitled *Astrobiology: The Search for Life in the Universe*, meaning hereby without limitation to revert to TERC all rights granted to IAT by instrument dated

_____.

It's About Time, Inc.

By:_____
    Laurie Kriendler        _____
    President                Date

Technical Education Research
Centers, Inc.

By:_____   6/4/03
    Dennis Bartels           _____
    President                Date

4

# INVOICE

## Astrobiology Project (4140.4)

For expenses incurred at NSTA San Diego

For: Ingrid Castro
IAT
84 Business Park Drive
Armonk, NY10504

Invoice for Promotional Astrobiology CD-ROM Sampler

Date: ___4/16/02_____

To: _____It's About Time Publishing_____

## For Production of CD

Total cost = _$653.61, make check payable to **TERC/Astrobiology Project/4140.4**

Please remit to:

TERC
attn: Jeff Lockwood
2067 Mass Ave.
Cambridge, MA 02140

# INVOICE

## Astrobiology Project (4140.4)

For expenses incurred at NSTA San Diego

For: Ingrid Castro
IAT
84 Business Park Drive
Armonk, NY 10504

Invoice for Services Rendered:

Date: ___3/2- - 3/30/02_____

To: _____It's About Time Publishing_____

For Servic es Preformed

Pay for plane tickets as per agreement for NSTA Convention, San Diego, CA

Summary of Travel:

J. Lockwood – 197.00, Tashà Morris – 628.92, Jodi Asbell-Clarke – 578.90, Teon Edwards – 406.00, Brian Conroy – 592.50

Sum of travel = _$2403.32_payment due, make check payable to TERC/Astrobiology Project/4140.4

Please remit to:

TERC attn: Jeff Lockwood
2067 Mass Ave.
Cambridge, MA 02140

%JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

TECHNICAL EDUCATION RESEARCH
CENTERS, INC.,

**DEFENDANTS**

LAURTOM, INC.,

(b) County of Residence of First Listed Plaintiff __Middlesex__
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

(c) Attorney's (Firm Name, Address, and Telephone Number)
Amy C. Mainelli, Esquire
Kotin, Crabtree & Strong, LLP
One Bowdoin Square, Boston, MA  02114
617-227-7031

Attorneys (If Known)

## 04 CV 12539 RCL

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☒ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS —Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is an action for breach of contract.

## VII. REQUESTED IN   COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S)   IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE  12-3-04

SIGNATURE OF ATTORNEY OF RECORD  Amy C. Mainelli

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) TECHNICAL EDUCATION RESEARCH CENTERS, INC.
    v. LAURTOM, INC.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See
    local rule 40.1(a)(1)).

    [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [ ]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    [X]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    [ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

    [ ]  V.    150, 152, 153.

    **04 cv 12539 RCL**

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

    N/A

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
    28 USC §2403)

                                                                    YES [ ]    NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES [ ]    NO [X]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES [ ]    NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).

                                                                    YES [ ]    NO [X]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
        agencies,  residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
    yes, submit a separate sheet identifying the motions)

                                                                    YES [ ]    NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Amy C. Mainelli, Esquire

ADDRESS         Kotin, Crabtree & Strong, LLP, One Bowdoin Square, Boston, MA 02114

TELEPHONE NO.   617-227-7031

(Coversheetlocal.wpd - 10/17/02)