UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TECHNICAL EDUCATION RESEARCH CENTERS, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 04-12539 RCL |
| LAURTOM, INC., ) ) | |
| Defendant. ) | |

## NOTICE OF FILING

Pursuant to Fed.R.Civ.P. 26, the plaintiff, Technical Education Research Center, Inc., certifies that it has this day served on the defendant the expert report of Elizabeth Stage, Ed.D.

Respectfully submitted,

TECHNICAL EDUCATION RESEARCH CENTERS, INC.,

Plaintiff,
By its attorneys,

*/s/ Sherry L. Ruschioni*

William S. Strong, BBO# 483520
Sherry L. Ruschioni, BBO# 643393
Amy C. Mainelli, BBO# 657201
Kotin, Crabtree & Strong, LLP
One Bowdoin Square
Boston, MA 02114
Tel: (617) 227-7031
Fax: (617) 367-2988

DATED: September 14, 2005

# ELIZABETH K. STAGE

Lawrence Hall of Science  
1 Centennial Drive  
University of California, Berkeley  
Berkeley, CA 94720-5200  
(510) 642-4193, FAX (510) 643-4959  
stage@berkeley.edu

1247 Alvarado Road  
Berkeley, CA 94705  
(510) 848-0542

## i. PROFESSIONAL PREPARATION

| | | |
|---|---|---|
| Harvard University, Cambridge, MA Science Education | Ed.D. | 1978 |
| Harvard University, Cambridge, MA General Purposes | Ed.M., | 1975 |
| Smith College, Northampton, MA Chemistry | A.B. | 1972 |

Named Sophia Smith Scholar 1968, Elected to Sigma Xi 1972  
Awarded Smith College Medal for work in equity and curriculum reform,    1996

## ii. APPOINTMENTS

| | |
|---|---|
| 2003- | Director, Lawrence Hall of Science (LHS), University of California, Berkeley (UCB) |
| 2001-03 | Director of Mathematics and Science Professional Development, Educational Outreach, University of California, Office of the President (UCOP) |
| 2000-03 | Director, Mathematics Professional Development Institutes, UCOP |
| 1993-99 | Director of Science, New Standards, UCOP |
| 1992-93 | Director, Critique & Consensus, National Research Council, National Committee on Science Education Standards and Assessment, Washington, DC |
| 1989-94 | Executive Director, California Science Project, UCOP |
| 1987-88 | Schumann Fellow and Lecturer on Education, Harvard Graduate School Of Education (HGSE) |
| 1984-89 | Director, Mathematics & Computer Education, LHS, UCB |
| 1983-89 | Director, Bay Area Mathematics Project, (California Mathematics Project) Graduate School of Education, UCB |
| 1980-84 | Co-Director, Mathematical Reasoning Improvement Study, Research Project, LHS, Director of Research and Evaluation, EQUALS Program, LHS |
| 1978-81 | Lecturer & Assistant Research Educator, Graduate Group in Science and Mathematics Education (SESAME), UCB |
| 1977-78 | Teaching Fellow, Law and Education, HGSE |
| 1972-74 | Teacher of Mathematics and Science, Grades 7 and 8, Williston-Northampton School, Easthampton, MA |
| 1971-72 | Elementary Science Specialist, Smith College Campus School |
| 1970-71 | Sloan Laboratory Assistant & NSF Undergraduate Research Participant, Smith College |

### iii. SELECTED PUBLICATIONS

Bybee, R.W. & Stage, E.K. "No country left behind," *Issues in Science and Technology*, 69-75, Winter 2005.

Stage, E.K., Mathematics and Science Editor, *New Standards Performance Standards*, Volume 1, Elementary School; Volume 2, Middle School; and Volume 3, High School. Pittsburgh, PA: Learning Research and Development Center, 1996.

Stage, E.K., "Measuring what we value: Equity and the new assessments" in Kreinberg, N. & Wahl, E., *Thoughts and Deeds: Equity in Mathematics and Science Education*. Washington, D.C.: American Association for the Advancement of Science, 1997.

Hoffman, K.M., & Stage, E.K., "Getting it right for the twenty-first century," *Educational Leadersh* 1993, 50(5):27-31.

Stage, E.K., "Interventions defined, implemented, and evaluated," *Science and Engineering Progra on Target for Women?* Washington, D.C.: National Academy Press, 1992.

Stage, E.K., *Can We Stand and Deliver? Mathematical Literacy in the Workplace*. Washington, D Education Writers Association, 1988.

Linn, M.C, DeBenedictis, T., Delucchi, K., Harris, A., & Stage, E., "Gender differences in national assessment of educational progress items: What does 'I don't know really mean?" *Journal of Research in Science Teaching*, 1987, 24(3):267-278.

Stage, E.K., Kreinberg, N., Eccles, J., & Becker, J.R., Increasing the participation and achievement girls and women in mathematics, science, and engineering. In S.S. Klein (Ed.), *Handbook fo Achieving Sex Equity Through Education*. Baltimore, Maryland: Johns Hopkins University Press, 1985.

Stage, E.K., "Improving science education for women and minorities." In. R.W. Bybee, J. Carlso and A.J. McCormack, Editors. *Redesigning Science and Technology Education*. Washingtc D.C.: National Science Teachers Association, 1984..

Karplus, R., Pulos, S., & Stage, E.K., Proportional reasoning of early adolescents. In R. Lesh & Landau (Eds.), *Acquisition of Mathematics Concepts and Processes*. New York: Academic    s, 1983.

### iv. SELECTED PROFESSIONAL ACTIVITIES

American Association for the Advancement of Science, Elected Fellow for work in equity, 1986

Bay Area Science Fair, Board of Directors, 2003-present.

California Curriculum Commission, Member 1987-89, Chair 1989-91; principal editor, *Califor Mathematics Framework*, 1985; committee chair, *California Science Framework*, 1990.

Coalition for Science After School, Steering Committee Chair, 2004-2006.

National Council of Teachers of Mathematics, California Mathematics Council, Board Membe    )85-
90, President 1987-89, Begle Award (for sustained leadership in mathematics education)    )2.

Organisation for Economic Cooperation and Development Programme on International Stude Assessment, Science Expert Group, Member 1998-2003.

UNITED STATES DISTRICT COURT
For the
DISTRICT OF MASSACHUSETTS

TECHNICAL EDUCATION RESEARCH
CENTERS, INC., Plaintiff

v.                                            Civil Action No. 04-12539 RCL

LAURTOM, INC, Defendant

PRELIMINARY EXPERT STATEMENT OF ELIZABETH STAGE

My name is Elizabeth Stage. As shown in the attached resume, I am an educator with over thirty years' experience in elementary and secondary school science curriculum and assessment issues at the state, national, and international levels. I was appointed by the California State Board of Education to the Curriculum Development and Supplemental Materials Commission in 1987 and served as chair from 1989 to 1991. I am currently director of the Lawrence Hall of Science, University of California, Berkeley, which is a publisher of instructional materials for grades pre-K through high school.

I have never served as an expert witness.

My statements are based on my extensive experience and my review of the Astrobiology student and teacher materials, the Goldman Research Group Report, and the Defendant's June 30, 2005 Answers to the Interrrogatories and Admissions.

The publishing agreement between TERC and IAT was signed on or about October 25, 2001. "No Child Left Behind" (NCLB) was signed on January 8, 2002.

IAT claims that, "After this agreement was signed, there was a national shift toward requiring high stakes tests for students, and the federal government was moving towards signing the 'No Child Left Behind' Act. These two phenomena caused a dramatic market shift away from attitude and process skill based curriculum, such as the Astrobiology Curriculum, and toward rigorous content-driven accountability curriculum." (Int. 6 Answer)

There are four aspects of this statement with which I disagree.

1. Based on my experience in the standards and accountability movement in the state of California in the 1980's and nationally in the 1990's through the New Standards

Project, I think that "No Child Left Behind" (NCLB) did not cause a shift towards accountability, rather it reflected a shift that was already well underway in many states, including those with large populations. In the 1990's, states with long histories of state-wide testing (e.g., California) were toughening up the rewards and sanctions; states without long histories of state-wide testing (e.g., Massachusetts) were instituting statewide standards and assessments. One needed only to look at the Texas system constructed when Ann Richards was governor and left in place by George W. Bush to predict that NCLB would do for the Nation what TAAS had done to curriculum and instruction in Texas. It is not true that conditions with respect to standards and accountability changed dramatically between October 25, 2001, when the publishing agreement was signed and January 8, 2002 when NCLB was signed.

2. Based on my knowledge of standards and curriculum, I think that the dichotomy between "attitude and process skill curriculum" and "rigorous content-driven accountability curriculum" is a false dichotomy. Most state standards include science process skills and most state assessments test process skills, so a curriculum that is geared towards state tests must include science process skills.

3. Based on my knowledge of standards and my examination of the Astrobiology Curriculum, the Astrobiology Curriculum is not accurately characterized in IAT's statement. Core science content is taught in Astrobiology; one only need to turn to pages 140-153, which address elements, molecules, the periodic table, and photosynthesis; or pages 184-193, which address cell theory and the differences between prokaryotic and eukaryotic cells; or pages 454-456, which address the relationship between gravity and planetary orbits to find it.

4. Based on my analysis of the differences between NCLB and the state accountability systems that were different from that of Texas, the most profound affect of NCLB was the requirement that every demographic sub-group of students make progress on every accountability measure. Boosting the average school score by virtue of a large improvement by the highest achieving students is insufficient to make Adequate Yearly Progress under NCLB. Thus, teachers, schools, and districts have an increased incentive to find materials that will effectively engage students who have previously been disengaged in learning. My examination of the Astrobiology Curriculum and the Goldman Report leads me to believe that it would provide learning experiences that would engage some of the students who are not reached by traditional, didactic presentations of content. In other words, serious attention to the new requirements of NCLB should create a market for innovative materials.

Later in the answer to Int. 6, IAT says that it "Would publish the Curriculum in another format more suited to new market conditions, specifically as a black-and-white version, an electronic version, or as a teacher's resource." These options are

not consistent with the market as I have experienced it in my years of involvement in state adoptions and more recently as a publisher.

It is conventional wisdom that color is necessary for texts to be published, so I find the black-and-white option a cost-saver but not a market-builder. The traditional publishers often use color for decoration so that their texts will be selected by teachers. Publishers of innovative programs, such as Key Curriculum Press and Kendall Hunt, use color effectively for educational purposes, such as illustrating a graph or enhancing a diagram. The effective use of color photographs in Astrobiology, in particular, makes it educationally far more desirable to have a color product. See, for example, the section, "Every Picture Tells a Story", pages 11-16; the black-and-white photographs are far less salient than the color photographs; or, for example, figures 11-14 and 11-15 on page 364, which would be far less effective in black and white. Note also that the Goldman Research Group report indicates that the teachers in the field test rated the images as highest, an average of 5.4 on a 6-point scale, in usefulness, Exhibit 12, page 10.

I have been involved in the University of California's analysis of legislation that would require electronic versions of materials to be provided in California to reduce costs and reduce the weight of texts. From these discussions, I have learned that electronic versions are often requested as part of an adoption decision but are rarely purchased. Electronic versions reduce the publishers' costs of production and distribution, and thus the purchase price at the district, school, or classroom level. But once the purchase is made, printing hard copies that students with unreliable access to computers at school and at home drives up the costs at the classroom level. Thus, we have been told by our publishing partners that districts ask for electronic versions to be available but use them in limited cases, such as printing large font versions for low vision students. Finally, many states in their adoption procedures still require a hard-bound student editions; Lawrence Hall of Science has had to produce hard-bound student editions of some products simply to be considered for purchase in these jurisdictions.

Teacher resource documents are nearly always sold with student materials, usually given for free with the purchase of a class set of 25 copies of the student edition. While there are exceptions to this general rule, the market is accustomed to getting teacher materials for free or very low cost. Thus, it would be hard to recover the costs of a teacher resource absent the student materials.

In conclusion, the alternatives that IAT was proposing are not viable. The market expectation is that electronic versions and teacher resources are provided at little or no cost in conjunction with the sales of student editions that are produced in color.

It is my understanding that this matter is still early in the discovery phase, and that additional materials may be in the process of being produced or may be requested later. Should any subsequent information be produced and materially alter or affect any of these opinions, I will either submit a supplemental report or be prepared to discuss them during any scheduled deposition.

At this point in the development of this case, I do not know whether I will be using any demonstrative aids during my testimony. Should I decide to use any such aids, I will assure that they are made available for review prior to their use in accordance with the Court's orders.

For my professional service in this case, the University of California will invoice at the prorated rate of $1600 per day, the published rate for senior staff consultanting at the Lawrence Hall of Science, plus travel and other expenses. I will not receive any renumeration for my service other than the receipt of my normal salary.

This report is signed under penalty of perjury on this 12th day of September, 2005, in Berkeley, California.

_____
Elizabeth K. Stage